**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

|  |  |  |
|---|---|---|
| WILLA MACK, CARLOS ABAD, ROBERT ADAMSON, ROBERT BAINE, STEVEN BARBER, RACHEL BARNES, LORI BEARD, FREDERICK BEHRENS, LORI BOENDER, EARL BOWLING, ABRAHAM CARDONA, BRYAN CARKEY, ANISSA CARR, SCOTT CARTER, BILLY COOK, LOUANA CORDARO, JAMES COWEN, DAVID CRAY, AMY DANFORTH, MICHAEL DANHOFF, DEBORAH DANLEY, JEFFREY DAVIS, PIERRE DESJARDINS, SCOTT DOUCETTE, JOHN DWYER, CHARLENE ESPINOZA, MARINA FALZONE, HERBERT FIELDS, OMAR FIGUEROA, EUDENE FOX, GUY FOX, SONDRA FRUS, RICKY GARCIA, EMMA GRIFFIN, GARY HAMMOND, DALE HARRIS, RICHIE HEATH, MATTHEW HOLLAND, RONALD KANE, WILLIAM KANE JR., FRANK KARR, HOWARD KAYE, RUTH KULESZ, DIANA LENTZ, ANNE LEPPERT, DARLENE MAFFETT, ANTHONY MATTERA, HAROLD MORROW JR., COLLINS MURRAY, DOMINGA PEREZ-DIAZ, SCOT PESCHANSKY, RICARDO RAMIREZ, BRANDON RANDOLPH, PAUL REHN, DOMINIQUE ROBIN, MICHAEL ROSENTHAL, JOEL SANSONE, BELINDA SAUNDERS, JUDY SCHMIDT, GENE SELDENRIGHT, JUNE SMITH, DEREK SMITH, EDWARD SMITH, JACQUELINE SOVA, DAVID STEVENS, MONTRELL STEWART, ALWYNE STROSE, DEBORAH TAYLOR, MARIZA TORRACO, ENRIQUE TORRES, ANNA TRITTA, ROBERTO VIERIA, CURTIS WAGNER, KENNETH WEIR, AND MARVIN ZUICK, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CASE NO.** _____  **COMPLAINT**  **JURY TRIAL DEMANDED** |
| **Plaintiffs,** | ) ) ) | |
| vs. | ) | |

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

3M COMPANY (F/K/A MINNESOTA
MINING AND MANUFACTURING, CO.);
AGC CHEMICALS AMERICAS, INC.;
AGC, INC. (f/k/a Asahi Glass Co., Ltd.);
ARCHROMA U.S., INC.;
ARKEMA, INC.;
BASF CORPORATION;
BUCKEYE FIRE EQUIPMENT CO.;
CHEMDESIGN PRODUCTS, INC.;
CHEMGUARD, INC.;
CLARIANT CORPORATION;
CORTEVA, INC.;
DUPONT DE NEMOURS, INC.;
DYNAX CORPORATION;
E.I. DU PONT DE NEMOURS AND
COMPANY;
THE CHEMOURS COMPANY;
THE CHEMOURS COMPANY FC, LLC;
TYCO FIRE PRODUCTS, LP;
AND JOHN DOE DEFENDANTS 1-49,

     **Defendants.**

---

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Willa Mack, Carlos Abad, Robert Adamson, Robert Baine, Steven Barber, Rachel

Barnes, Lori Beard, Frederick Behrens, Lori Boender, Earl Bowling, Abraham Cardona, Bryan

Carkey, Anissa Carr, Scott Carter, Billy Cook, Louana Cordaro, James Cowen, David Cray, Amy

Danforth, Michael Danhoff, Deborah Danley, Jeffrey Davis, Pierre Desjardins, Scott Doucette, John

Dwyer, Charlene Espinoza, Marina Falzone, Herbert Fields, Omar Figueroa, Eudene Fox, Guy Fox,

Sondra Frus, Ricky Garcia, Emma Griffin, Gary Hammond, Dale Harris, Richie Heath, Matthew

Holland, Ronald Kane, William Kane Jr., Frank Karr, Howard Kaye, Ruth Kulesz, Diana Lentz,

Anne Leppert, Darlene Maffett, Anthony Mattera, Harold Morrow Jr., Collins Murray, Dominga

Perez-Diaz, Scot Peschansky, Ricardo Ramirez, Brandon Randolph, Paul Rehn, Dominique Robin,

Michael Rosenthal, Joel Sansone, Belinda Saunders, Judy Schmidt, Gene Seldenright, June Smith,

Derek Smith, Edward Smith, Jacqueline Sova, David Stevens, Montrell Stewart, Alwyne Strose,

Deborah Taylor, Mariza Torraco, Enrique Torres, Anna Tritta, Roberto Vieria, Curtis Wagner, Kenneth Weir, and Marvin Zuick, by and through undersigned counsel, bring this action against Defendants 3M Company (f/k/a Minnesota Mining and Manufacturing, Co.), AGC Chemicals Americas, Inc., AGC, Inc. (f/k/a Asahi Glass Co., Ltd.), Archroma U.S., Inc., Arkema Inc., BASF Corporation, Buckeye Fire Equipment Company, Chemdesign Products, Inc., Chemguard, Inc., Clariant Corporation, Corteva, Inc., DuPont De Nemours, Inc., Dynax Corporation, E.I. Du Pont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, and Tyco Fire Products, LP (individually and as successor-in-interest to The Ansul Company).   Plaintiffs hereby allege, upon information and belief, as follows:

## I.      SUMMARY OF THE CASE

1.      Plaintiffs bring this action against Defendants who manufactured aqueous film-forming foam ("AFFF"), exposure to which resulted in Plaintiffs' serious personal injuries.   The AFFF manufactured by Defendants contained per- and polyfluoroalkyl substances ("PFAS") including, but not limited to, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS").

2.      PFOS and PFOA are fluorosurfactants that repel oil, grease, and water. PFOS, PFOA, and/or their chemical precursors, are or were components of AFFF products, which are firefighting suppressant agents used in training and firefighting activities for fighting Class B fires. Class B fires include fires involving hydrocarbon fuels such as petroleum or other flammable liquids.

3.      PFOS and PFOA are mobile, persist indefinitely in the environment, bioaccumulate in individual organisms and humans, and biomagnify up the food chain.  PFOS and PFOA are also associated with multiple and significant adverse health effects in humans, including but not limited to kidney cancer, testicular cancer, high cholesterol, thyroid disease, ulcerative colitis, and pregnancy-induced hypertension.

4.      At various times from the 1960s through today, Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products containing PFOS, PFOA, and/or their chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants and/or perfluourinated chemicals contained in AFFF.

5.      This Complaint refers to AFFF, PFOA, PFOS, PFAS compounds, and fluorosurfactants collectively as "Fluorosurfactant Products."

6.      Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the knowledge that firefighters would be exposed to these toxic compounds during fire protection, training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

7.      Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the knowledge that PFAS are toxic, persist indefinitely, and would be routinely released into the environment, including the drinking water supply, even when the AFFF was used as directed and intended by Defendants.

8.      Due to the widespread PFAS contamination caused by Defendants' Fluorosurfectant Products, including the contamination of Plaintiffs' drinking water supplies, Plaintiffs have suffered serious personal injuries set forth in detail below. Plaintiffs' injuries are a direct result of their exposure to the PFAS contamination present in their drinking water supplies.

9.      Plaintiffs, as residents and those who visited, worked, or resided in the contaminated areas, have been unknowingly exposed for many years to dangerous PFAS levels.

10.     Plaintiffs' unwitting exposure to PFAS in their water supply as a result of Defendants' conduct set forth below is the direct and proximate cause of Plaintiffs' injuries.

11.     Plaintiffs file this lawsuit to recover compensatory and all other damages, including but not limited to past and future (1) expenses for care, treatment and hospitalization incident to their

injuries;  (2) compensation for physical pain and suffering;  (3) loss of income, wages, or earning capacity; (4) compensation for mental or emotional pain and anguish; (5) physical impairment; (6) loss of companionship and society;  (7) inconvenience; (8) loss of enjoyment of life; and (9) exemplary damages.

## II.    PARTIES

### A.  PLAINTIFFS

12.    Plaintiff Willa Mack is a citizen and resident of Miami, Florida. From approximately 1971 to 2025, Plaintiff Willa Mack was regularly exposed to PFAS through drinking water at residences in Miami, Florida.

13.    On or about June 21, 2018, Plaintiff Willa Mack was diagnosed with kidney cancer in Miami, Florida and subsequently underwent a radical right nephrectomy.

14.    Plaintiff Carlos Abad is a citizen and resident of Orlando, Florida. From approximately 2001 to 2025, Plaintiff Carlos Abad was regularly exposed to PFAS through drinking water at residences in Orlando, Florida and Azalea Park, Florida.

15.    On or about September 2016, Plaintiff Carlos Abad was diagnosed with kidney cancer in Orlando, Florida and subsequently underwent a partial left nephrectomy.

16.    Plaintiff Robert Adamson is a citizen and resident of Indian Rocks Beach, Florida. From approximately 1990 to 2012, Plaintiff Robert Adamson was regularly exposed to PFAS through drinking water at residences in Pompano Beach, Florida; Holiday, Florida; Coconut Creek, Florida; and Coral Springs, Florida.

17.    On or about October 6, 2018, Plaintiff Robert Adamson was diagnosed with kidney cancer in Clearwater, Florida and subsequently underwent a radical left nephrectomy.

18.     Plaintiff Robert Baine is a citizen and resident of Bogart, Georgia. From approximately 1987 to 2011, Plaintiff Robert Baine was regularly exposed to PFAS through drinking water at residences in Fallbrook, California and Lakeland, Florida.

19.     On or about 2013, Plaintiff Robert Baine was diagnosed with testicular cancer in Watkinsville, Georgia and subsequently underwent a total right orchiectomy.

20.     Plaintiff Steven Barber is a citizen and resident of Norfolk, Arkansas. From approximately 1970 to 2023, Plaintiff Steven Barber was regularly exposed to PFAS through drinking water at residences in Aurora, Colorado and Pensacola, Florida.

21.     On or about October 12, 2016, Plaintiff Steven Barber was diagnosed with testicular cancer in Denver, Colorado and subsequently underwent a total left orchiectomy.

22.     Plaintiff Rachel Barnes is a citizen and resident of Mount Ayr, Iowa. From approximately 1996 to 1998, Plaintiff Rachel Barnes was regularly exposed to PFAS through drinking water at residences in Altamonte Springs, Florida and Casselberry, Florida.

23.     On or about July 17, 2023, Plaintiff Rachel Barnes was diagnosed with kidney cancer in Rochester, Minnesota and subsequently underwent a radical right nephrectomy.

24.     Plaintiff Lori Beard is a citizen and resident of Pompano Beach, Florida. From approximately 2000 to 2011, Plaintiff Lori Beard was regularly exposed to PFAS through drinking water at residences in Plantation, Florida; Miramar, Florida; Pembroke Pines, Florida; and Delray Beach, Florida.

25.     On or about September 6, 2023, Plaintiff Lori Beard was diagnosed with kidney cancer in Boca Raton, Florida and subsequently underwent a radical right nephrectomy.

26.     Plaintiff Frederick Behrens is a citizen and resident of Clermont, Florida. From approximately 1987 to 2020, Plaintiff Frederick Behrens was regularly exposed to PFAS through

drinking water at residences and workplaces in Goffstown, New Hampshire; Mechanicsburg, Pennsylvania; Northwood, New Hampshire; Enfield, Connecticut; and Orlando, Florida.

27.     On or about November 2017, Plaintiff Frederick Behrens was diagnosed with kidney cancer in Orlando, Florida and subsequently underwent an ablation.

28.     Plaintiff Lori Boender is a citizen and resident of Bradenton, Florida. From approximately 1976 to 2025, Plaintiff Lori Boender was regularly exposed to PFAS through drinking water at residences in Bradenton, Florida; Schererville, Indiana; Dyer, Indiana; and Crown Point, Indiana.

29.     On or about July 2019, Plaintiff Lori Boender was diagnosed with kidney cancer in Lakewood Ranch, Florida and subsequently underwent a radical right nephrectomy.

30.     Plaintiff Earl Bowling is a citizen and resident of Brooksville, Florida. From approximately from 1988 to 2025, Plaintiff Earl Bowling was regularly exposed to PFAS through drinking water at residences in Brooksville, Florida; New Port Richey, Florida; Hudson, Florida; Bayonet Point, Florida; and Spring Hill, Florida.

31.     On or about November 12, 2024, Plaintiff Earl Bowling was diagnosed with kidney cancer in Spring Hill, Florida and subsequently underwent related treatment.

32.     Plaintiff Abraham Cardona is a citizen and resident of Fort Pierce, Florida. From approximately 1982 to 2002, Plaintiff Abraham Cardona was regularly exposed to PFAS through drinking water at residences and workplaces in Miami, Florida; Estero, Florida; and Fort Myers, Florida.

33.     On or about June 2, 2022, Plaintiff Abraham Cardona was diagnosed with kidney cancer in Aventura, Florida and subsequently underwent a radical left nephrectomy.

34.     Plaintiff Bryan Carkey is a citizen and resident of South Windsor, Connecticut. From approximately 1980 to 2005, Plaintiff Bryan Carkey was regularly exposed to PFAS through

drinking water at residences and workplaces in Cary, North Carolina; Vestal, New York; Durham, North Carolina; and Raleigh, North Carolina.

35.     On or about 2004, Plaintiff Bryan Carkey was diagnosed with testicular cancer in Coral Springs, Florida and subsequently underwent a right orchiectomy.

36.     Plaintiff Anissa Carr is a citizen and resident of Elizabethtown, Kentucky. From approximately 1972 to 2020, Plaintiff Anissa Carr was regularly exposed to PFAS through drinking water at residences in Lakeland, Florida; Winter Haven, Florida; and Gibsonton, Florida.

37.     On or about February 13, 2017, Plaintiff Anissa Carr was diagnosed with kidney cancer in Tampa, Florida and subsequently underwent a partial left nephrectomy.

38.     Plaintiff Scott Carter is a citizen and resident of Ruskin, Florida. From approximately 1998 to 2022, Plaintiff Scott Carter was regularly exposed to PFAS through drinking water at residences in Tampa, Florida; Apollo Beach, Florida; and Dover, Florida.

39.     On or about June 20, 2018, Plaintiff Scott Carter was diagnosed with testicular cancer in Riverview, Florida and subsequently underwent a total right orchiectomy.

40.     Plaintiff Billy Cook is a citizen and resident of Tarboro, North Carolina. From approximately 1967 to 2024, Plaintiff Billy Cook was regularly exposed to PFAS through drinking water at residences in Greenacres, Florida; Hollywood, Florida; and Loxahatchee, Florida.

41.     On or about 2008, Plaintiff Billy Cook was diagnosed with testicular cancer in Zion, Illinois and subsequently underwent chemotherapy treatment.

42.     Plaintiff Louana Cordaro is a citizen and resident of Daytona Beach, Florida. From approximately 1970 to 2025, Plaintiff Louana Cordaro was regularly exposed to PFAS through drinking water at residences in Davenport, Florida; Daytona Beach, Florida; South Daytona, Florida; and Holly Hill, Florida.

43.     On or about November 2020, Plaintiff Louana Cordaro was diagnosed with clear cell renal carcinoma in Port Orange, Florida and subsequently underwent a radical left nephrectomy.

44.     Plaintiff James Cowen is a citizen and resident of Oviedo, Florida. From approximately 1972 to 2025, Plaintiff James Cowen was regularly exposed to PFAS through drinking water at residences in Davenport, Florida; Pembroke Pines, Florida; and Miami, Florida.

45.     On or about 2018, Plaintiff James Cowen was diagnosed with kidney cancer in Orlando, Florida and subsequently underwent a partial right nephrectomy.

46.     Plaintiff David Cray is a citizen and resident of Belleview, Florida. From approximately 1991 to 2010, Plaintiff David Cray was regularly exposed to PFAS through drinking water at residences in Ocala, Florida.

47.     On or about April 18, 2024, Plaintiff David Cray was diagnosed with testicular cancer in Tampa, Florida and subsequently underwent a total right orchiectomy.

48.     Plaintiff Amy Danforth is a citizen and resident of Milton, Florida. From approximately 1990 to 2022, Plaintiff Amy Danforth was regularly exposed to PFAS through drinking water at residences in Pensacola, Florida; Gulf Breeze, Florida; and Newport News, Florida.

49.     On or about 2017, Plaintiff Amy Danforth was diagnosed with clear cell renal carcinoma in Pensacola, Florida and subsequently underwent a partial left nephrectomy.

50.     Plaintiff Michael Danhoff is a citizen and resident of Georgetown, Florida. From approximately 1984 to 2010, Plaintiff Michael Danhoff was regularly exposed to PFAS through drinking water at residences in Pompano Beach, Florida; Albion, Michigan; Fort Lauderdale, Florida; and Southwest Ranches, Florida.

51.     On or about November 26, 2024, Plaintiff Michael Danhoff was diagnosed with kidney cancer in Daytona Beach, Florida and subsequently underwent a left nephrectomy.

52.     Plaintiff Deborah Danley is a citizen and resident of New Port Richey, Florida. From approximately 1988 to 2006, Plaintiff Deborah Danley was regularly exposed to PFAS through drinking water at residences in Coral Springs, Florida; Pompano Beach, Florida; Tamarac, Florida; Punta Gorda, Florida; and Egg Harbor City, New Jersey.

53.     On or about March 3, 2014, Plaintiff Deborah Danley was diagnosed with kidney cancer in Plantation, Florida and subsequently underwent a radical left nephrectomy.

54.     Plaintiff Jeffrey Davis is a citizen and resident of Townsend, Georgia. From approximately 1982 to 2014, Plaintiff Jeffrey Davis was regularly exposed to PFAS through drinking water at residences and workplaces in Savannah, Georgia; Eubank, Kentucky; Port Wentworth, Georgia; and Garden City, Georgia.

55.     On or about April 19, 2017, Plaintiff Jeffrey Davis was diagnosed with clear cell renal carcinoma in Jacksonville, Florida and subsequently underwent a partial left nephrectomy.

56.     Plaintiff Pierre Desjardins is a citizen and resident of Tarpon Springs, Florida. From approximately 1984 to 2025, Plaintiff Pierre Desjardins was regularly exposed to PFAS through drinking water at residences in Tarpon Springs, Florida and Tampa, Florida.

57.     On or about 2011, Plaintiff Pierre Desjardins was diagnosed with kidney cancer in Tampa, Florida and subsequently underwent a radical right nephrectomy.

58.     Plaintiff Scott Doucette is a citizen and resident of Naples, Florida. From approximately 1995 to 2003, Plaintiff Scott Doucette was regularly exposed to PFAS through drinking water at residences in Pompano Beach, Florida and Lauderdale-By-The-Sea, Florida.

59.     On or about September 11, 2023, Plaintiff Scott Doucette was diagnosed with testicular cancer in Bonita Springs, Florida and subsequently underwent a radical right orchiectomy.

60.     Plaintiff John Dwyer is a citizen and resident of Boynton Beach, Florida. From approximately 1970 to 2025, Plaintiff John Dwyer was regularly exposed to PFAS through drinking

water at residences in Boynton Beach, Florida; Aberdeen Township, New Jersey; Royal Palm Beach, Florida; Greenacres, Florida; and Pine Bush, New York.

61.     On or about March 2021, Plaintiff John Dwyer was diagnosed with kidney cancer in Wellington, Florida and subsequently underwent a partial left nephrectomy.

62.     Plaintiff Charlene Espinoza is a citizen and resident of West Palm Beach, Florida. From approximately 1991 to 2025, Plaintiff Charlene Espinoza was regularly exposed to PFAS through drinking water at residences in West Palm Beach, Florida.

63.     On or about March 27, 2015, Plaintiff Charlene Espinoza was diagnosed with clear cell renal carcinoma in Miami, Florida and subsequently underwent a partial left nephrectomy.

64.     Plaintiff Marina Falzone is a citizen and resident of Milton, Florida. From approximately 1986 to 2025, Plaintiff Marina Falzone was regularly exposed to PFAS through drinking water at residences in Milton, Florida; Pensacola, Florida; and Bakersfield, California.

65.     On or about December 8, 2022, Plaintiff Marina Falzone was diagnosed with clear cell renal carcinoma in Pensacola, Florida and subsequently underwent a partial right nephrectomy.

66.     Plaintiff Herbert Fields is a citizen and resident of Longwood, Florida. From approximately 1982 to 2025, Plaintiff Herbert Fields was regularly exposed to PFAS through drinking water at residences in Phoenix, Arizona; Longwood, Florida; San Diego, California; and Los Angeles, California.

67.     On or about November 2011, Plaintiff Herbert Fields was diagnosed with kidney cancer in Longwood, Florida and subsequently underwent a partial left nephrectomy.

68.     Plaintiff Omar Figueroa is a citizen and resident of Manchester, New Hampshire. From approximately 1999 to 2006, Plaintiff Omar Figueroa was regularly exposed to PFAS through drinking water at residences in Orlando, Florida and Tarpon Springs, Florida.

69.      On or about April 19, 2019, Plaintiff Omar Figueroa was diagnosed with testicular cancer in North Conway, New Hampshire and subsequently underwent a total left orchiectomy.

70.      Plaintiff Eudene Fox is a citizen and resident of Lillian, Alabama. From approximately 1977 to 2012, Plaintiff Eudene Fox was regularly exposed to PFAS through drinking water at residences in Milton, Florida; Pensacola, Florida; and Huntsville, Alabama.

71.      On or about October 2024, Plaintiff Eudene Fox was diagnosed with kidney cancer in Pensacola, Florida and subsequently underwent a radical right nephrectomy.

72.      Plaintiff Guy Fox is a citizen and resident of Daytona Beach, Florida. From approximately 1972 to 2024, Plaintiff Guy Fox was regularly exposed to PFAS through drinking water at residences in Apopka, Florida; Orlando, Florida; and DeBary, Florida.

73.      On or about August 13, 2020, Plaintiff Guy Fox was diagnosed with testicular cancer in Orlando, Florida and subsequently underwent a total left orchiectomy.

74.      Plaintiff Sondra Frus is a citizen and resident of Jacksonville, Florida. From approximately 1976 to 1989, Plaintiff Sondra Frus was regularly exposed to PFAS through drinking water at residences in Rockford, Illinois and Loves Park, Illinois.

75.      On or about May 2025, Plaintiff Sondra Frus was diagnosed with kidney cancer in Jacksonville, Florida and subsequently underwent a partial nephrectomy.

76.      Plaintiff Ricky Garcia is a citizen and resident of Sunrise, Florida. From approximately 1976 to 2024, Plaintiff Ricky Garcia was regularly exposed to PFAS through drinking water at residences and workplaces in Miami, Florida; Plantation, Florida; Hialeah, Florida; and Fort Lauderdale, Florida.

77.      On or about January 27, 2025, Plaintiff Ricky Garcia was diagnosed with kidney cancer in Weston, Florida and subsequently underwent a radical right nephrectomy.

78.     Plaintiff Emma Griffin is a citizen and resident of Venice, Florida. From approximately 1970 to 2004, Plaintiff Emma Griffin was regularly exposed to PFAS through drinking water at residences and workplaces in Little Falls Township, New Jersey; Little Falls, New Jersey; and Totowa, New Jersey.

79.     On or about October 2009, Plaintiff Emma Griffin was diagnosed with kidney cancer in Sarasota, Florida and subsequently underwent a radical left nephrectomy.

80.     Plaintiff Gary Hammond is a citizen and resident of Lake Worth, Florida. From approximately 2009 to 2013, Plaintiff Gary Hammond was regularly exposed to PFAS through drinking water at residences in Aventura, Florida; North Miami Beach, Florida; and Del Rey Beach, Florida.

81.     On or about March 24, 2011, Plaintiff Gary Hammond was diagnosed with testicular cancer in Aventura, Florida and subsequently underwent a right orchiectomy.

82.     Plaintiff Dale Harris is a citizen and resident of New Smyrna Beach, Florida. From approximately 1972 to 1996, Plaintiff Dale Harris was regularly exposed to PFAS through drinking water at residences and schools in Wilmington, North Carolina; Wrightsville Beach, North Carolina; High Point, North Carolina; and Elon, North Carolina.

83.     On or about January 9, 2025, Plaintiff Dale Harris was diagnosed with kidney cancer in Port Orange, Florida and subsequently underwent a radical right nephrectomy.

84.     Plaintiff Richie Heath is a citizen and resident of Montverde, Florida. From approximately 1995 to 2014, Plaintiff Richie Heath was regularly exposed to PFAS through drinking water at residences in Orlando, Florida and Clermont, Florida.

85.     On or about 2011, Plaintiff Richie Heath was diagnosed with testicular cancer in Orlando, Florida and subsequently underwent a total left orchiectomy.

86.     Plaintiff Matthew Holland is a citizen and resident of Clearwater, Florida. From approximately 2004 to 2007, Plaintiff Matthew Holland was regularly exposed to PFAS through drinking water at residences in St. Petersburg, Florida; Riverview, Florida; and Tampa, Florida.

87.     On or about 2007, Plaintiff Matthew Holland was diagnosed with testicular cancer in St. Petersburg, Florida and subsequently underwent a total left orchiectomy.

88.     Plaintiff Ronald Kane is a citizen and resident of Boynton Beach, Florida. From approximately 1979 to 2022, Plaintiff Ronald Kane was regularly exposed to PFAS through drinking water at residences in Warminster, Pennsylvania; Wynnewood, Pennsylvania; Richboro, Pennsylvania; Spring City, Pennsylvania; and Boca Raton, Florida.

89.     On or about June 2015, Plaintiff Ronald Kane was diagnosed with clear cell renal carcinoma in Boca Raton, Florida and subsequently underwent a cryoablation.

90.     Plaintiff William Kane Jr. is a citizen and resident of Royal Palm Beach, Florida. From approximately 1990 to 2022, Plaintiff William Kane Jr. was regularly exposed to PFAS through drinking water at residences in Manchester, New Hampshire; Schenectady, New York; Royal Palm Beach, Florida; and West Palm Beach, Florida.

91.     On or about July 2019, Plaintiff William Kane Jr. was diagnosed with kidney cancer in West Palm Beach, Florida and subsequently underwent a radical right nephrectomy.

92.     Plaintiff Frank Karr is a citizen and resident of Cumming, Georgia. From approximately 1967 to 1988, Plaintiff Frank Karr was regularly exposed to PFAS through drinking water at residences in Davie, Florida; Coral Springs, Florida; and Bay Harbor Islands, Florida.

93.     On or about September 10, 2021, Plaintiff Frank Karr was diagnosed with kidney cancer in Alpharetta, Georgia and subsequently underwent a radical right nephrectomy.

94.     Plaintiff Howard Kaye is a citizen and resident of Delray Beach, Florida. From approximately 1985 to 2025, Plaintiff Howard Kaye was regularly exposed to PFAS through

drinking water at residences in Delray Beach, Florida; Los Angeles, California; Beverly Hills, California; and Boca Raton, California.

95.     On or about April 22, 2025, Plaintiff Howard Kaye was diagnosed with clear cell renal carcinoma in Boca Raton, Florida and subsequently underwent a partial right nephrectomy.

96.     Plaintiff Ruth Kulesz is a citizen and resident of Hialeah, Florida. From approximately 1989 to 2025, Plaintiff Ruth Kulesz was regularly exposed to PFAS through drinking water at residences in Miami, Florida; Maimi Lakes, Florida; Miami Gardens, Florida; Hialeah, Florida; and Hollywood, Florida.

97.     On or about May 2021, Plaintiff Ruth Kulesz was diagnosed with kidney cancer in Hialeah, Florida and subsequently underwent a left nephrectomy.

98.     Plaintiff Diana Lentz is a citizen and resident of Coral Springs, Florida. From approximately 2001 to 2025, Plaintiff Diana Lentz was regularly exposed to PFAS through drinking water at residences and workplaces in Coral Springs, Florida and Fort Lauderdale, Florida.

99.     On or about December 9, 2024, Plaintiff Diana Lentz was diagnosed with kidney cancer in Fort Lauderdale, Florida and subsequently underwent a partial left nephrectomy.

100.    Plaintiff Anne Leppert is a citizen and resident of Pensacola, Florida. From approximately 1985 to 2025, Plaintiff Anne Leppert was regularly exposed to PFAS through drinking water at residences in Pensacola, Florida.

101.    On or about 2019, Plaintiff Anne Leppert was diagnosed with kidney cancer in Pensacola, Florida and subsequently underwent a left nephrectomy.

102.    Plaintiff Darlene Maffett is a citizen and resident of Panama City, Florida. From approximately 1970 to 1988, Plaintiff Darlene Maffett was regularly exposed to PFAS through drinking water at residences in East Saint Louis, Illinois and Chattanooga, Tennessee.

103. On or about December 30, 2015, Plaintiff Darlene Maffett was diagnosed with kidney cancer in Jacksonville, Florida and subsequently underwent a left nephrectomy.

104. Plaintiff Anthony Mattera is a citizen and resident of Cape Coral, Florida. From approximately 1970 to 2022, Plaintiff Anthony Mattera was regularly exposed to PFAS through drinking water at residences in Warren, Michigan; Detroit, Michigan; and Cape Coral, Florida.

105. On or about November 18, 2005, Plaintiff Anthony Mattera was diagnosed with testicular cancer in Myers, Florida and subsequently underwent a radical left orchiectomy.

106. Plaintiff Harold Morrow Jr. is a citizen and resident of Plantation, Florida. From approximately 1991 to 2003, Plaintiff Harold Morrow Jr. was regularly exposed to PFAS through drinking water at residences in Auburn, Alabama and Margate, Florida.

107. On or about 2008, Plaintiff Harold Morrow Jr. was diagnosed with testicular cancer in Fort Myers, Florida and subsequently underwent an orchiectomy.

108. Plaintiff Collins Murray is a citizen and resident of Miami, Florida. From approximately 2006 to 2025, Plaintiff Collins Murray was regularly exposed to PFAS through drinking water at residences in Miami, Florida.

109. On or about 2010, Plaintiff Collins Murray was diagnosed with clear cell renal carcinoma in Miami, Florida and subsequently underwent a right nephrectomy.

110. Plaintiff Dominga Perez-Diaz is a citizen and resident of Immokalee, Florida. From approximately 1994 to 2025, Plaintiff Dominga Perez-Diaz was regularly exposed to PFAS through drinking water at residences in Immokalee, Florida.

111. On or about 2010, Plaintiff Dominga Perez-Diaz was diagnosed with kidney cancer in Naples, Florida and subsequently underwent a left nephrectomy.

112. Plaintiff Scot Peschansky is a citizen and resident of Greenacres, Florida. From approximately 1978 to 2025, Plaintiff Scot Peschansky was regularly exposed to PFAS through

drinking water at residences in Suffern, New York; Bellmore, New York; Boynton Beach, Florida; Delray Beach, Florida; and Greenacres, Florida.

113.    On or about June 2024, Plaintiff Scot Peschansky was diagnosed with clear cell renal carcinoma in Boca Raton, Florida and subsequently underwent a partial left nephrectomy.

114.    Plaintiff Ricardo Ramirez is a citizen and resident of Hollywood, Florida. From approximately 1992 to 1997, Plaintiff Ricardo Ramirez was regularly exposed to PFAS through drinking water at residences in Sunny Isles, Florida.

115.    On or about 2012, Plaintiff Ricardo Ramirez was diagnosed with kidney cancer in New York, New York and subsequently underwent a partial right nephrectomy.

116.    Plaintiff Brandon Randolph is a citizen and resident of Orlando, Florida. From approximately 1988 to 2025, Plaintiff Brandon Randolph was regularly exposed to PFAS through drinking water at residences in Orlando, Florida.

117.    On or about July 22, 2011, Plaintiff Brandon Randolph was diagnosed with testicular cancer in Kissimmee, Florida and subsequently underwent a left orchiectomy.

118.    Plaintiff Paul Rehn is a citizen and resident of Knoxville, Tennessee. From approximately 1970 to 2016, Plaintiff Paul Rehn was regularly exposed to PFAS through drinking water at residences in Orlando, Florida and Apopka, Florida.

119.    On or about June 2005, Plaintiff Paul Rehn was diagnosed with testicular cancer in Apopka, Florida and subsequently underwent a total right orchiectomy.

120.    Plaintiff Dominique Robin is a citizen and resident of Palm Bay, Florida. From approximately 1985 to 2025, Plaintiff Dominique Robin was regularly exposed to PFAS through drinking water at residences and workplaces in Miami, Florida; Palm Bay, Florida; and Merritt Island, Florida.

121.    On or about September 19, 2018, Plaintiff Dominique Robin was diagnosed with clear cell renal carcinoma in Melbourne, Florida and subsequently underwent a partial right nephrectomy.

122.    Plaintiff Michael Rosenthal is a citizen and resident of Palm Coast, Florida. From approximately 1970 to 2014, Plaintiff Michael Rosenthal was regularly exposed to PFAS through drinking water at residences in San Diego, California; Davie, Florida; Miami, Florida; Miami Beach, Florida; and Pompano Beach, Florida.

123.    On or about 2019, Plaintiff Michael Rosenthal was diagnosed with kidney cancer in St. Augustine, Florida and subsequently underwent a radical right nephrectomy.

124.    Plaintiff Joel Sansone is a citizen and resident of Coral Springs, Florida. From approximately 1982 to 2025, Plaintiff Joel Sansone was regularly exposed to PFAS through drinking water at residences and workplaces in Pompano Beach, Florida; Coral Springs, Florida; and Lauderdale Lakes, Florida.

125.    On or about June 5, 2014, Plaintiff Joel Sansone was diagnosed with testicular cancer in Plantation, Florida and subsequently underwent a left orchiectomy.

126.    Plaintiff Belinda Saunders is a citizen and resident of Panama City Beach, Florida. From approximately 2001 to 2025, Plaintiff Belinda Saunders was regularly exposed to PFAS through drinking water at residences and workplaces in Coral Springs, Florida; Panama City Beach, Florida; and Melbourne, Florida.

127.    On or about 2023, Plaintiff Belinda Saunders was diagnosed with clear cell renal carcinoma in Newman, Georgia and subsequently underwent a partial right nephrectomy.

128.    Plaintiff Judy Schmidt is a citizen and resident of The Villages, Florida. From approximately 2001 to 2015, Plaintiff Judy Schmidt was regularly exposed to PFAS through drinking water at residences in The Villages, Florida and Orlando, Florida.

129. On or about 2015, Plaintiff Judy Schmidt was diagnosed with kidney cancer in Jacksonville, Florida and subsequently underwent a partial left nephrectomy.

130. Plaintiff Gene Seldenright is a citizen and resident of Atmore, Alabama. From approximately 2000 to 2023, Plaintiff Gene Seldenright was regularly exposed to PFAS through drinking water at residences in Pensacola, Florida; pace, Florida; and Milton, Florida.

131. On or about 2019, Plaintiff Gene Seldenright was diagnosed with kidney cancer in Pensacola, Florida and subsequently underwent a radical left nephrectomy.

132. Plaintiff June Smith is a citizen and resident of Okeechobee, Florida. From approximately 1978 to 1988, Plaintiff June Smith was regularly exposed to PFAS through drinking water at residences in Belmont, New Hampshire.

133. On or about January 28, 2013, Plaintiff June Smith was diagnosed with kidney cancer in Miami Beach, Florida and subsequently underwent a radical left nephrectomy.

134. Plaintiff Derek Smith is a citizen and resident of Northport, Alabama. From approximately 1995 to 2025, Plaintiff Derek Smith was regularly exposed to PFAS through drinking water at residences in Tampa, Florida; Spring Hill, Florida; Beverly Hills, Florida; and Northport, Alabama.

135. On or about December 2015, Plaintiff Derek Smith was diagnosed with testicular cancer in Tuscaloosa, Alabama and subsequently underwent a total left orchiectomy.

136. Plaintiff Edward Smith is a citizen and resident of Hamburg, New York. From approximately 1995 to 2025, Plaintiff Edward Smith was regularly exposed to PFAS through drinking water at residences in Sunrise, Florida.

137. On or about September 2012, Plaintiff Edward Smith was diagnosed with kidney cancer in Williamsville, New York and subsequently underwent a right nephrectomy.

138.     Plaintiff Jacqueline Sova is a citizen and resident of Lake Mary, Florida. From approximately 1979 to 2006, Plaintiff Jacqueline Sova was regularly exposed to PFAS through drinking water at residences in Longwood, Florida.

139.     On or about July 2015, Plaintiff Jacqueline Sova was diagnosed with kidney cancer in Altamonte Springs, Florida and subsequently underwent a radical right nephrectomy.

140.     Plaintiff David Stevens is a citizen and resident of Brooksville, Florida. From approximately 1974 to 1988, Plaintiff David Stevens was regularly exposed to PFAS through drinking water at residences in Homestead, Florida and Miami, Florida.

141.     On or about 2014, Plaintiff David Stevens was diagnosed with kidney cancer in Tampa, Florida and subsequently underwent a right nephrectomy.

142.     Plaintiff Montrell Stewart is a citizen and resident of Pensacola, Florida. From approximately 1980 to 2025, Plaintiff Montrell Stewart was regularly exposed to PFAS through drinking water at residences in Pensacola, Florida.

143.     On or about 2012, Plaintiff Montrell Stewart was diagnosed with testicular cancer in Bismarck, North Dakota and subsequently underwent a right orchiectomy.

144.     Plaintiff Alwyne Strose is a citizen and resident of Orlando, Florida. From approximately 1989 to 2025, Plaintiff Alwyne Strose was regularly exposed to PFAS through drinking water at residences in Philadelphia, Pennsylvania; Lynn, Massachusetts; Hialeah, Florida; Miami, Florida; and Orlando, Florida.

145.     On or about October 6, 2020, Plaintiff Alwyne Strose was diagnosed with testicular cancer in Orlando, Florida and subsequently underwent a left orchiectomy.

146.     Plaintiff Deborah Taylor is a citizen and resident of Plant City, Florida. From approximately 1970 to 2025, Plaintiff Deborah Taylor was regularly exposed to PFAS through drinking water at residences in Lakeland, Forida and Plant City, Florida.

147.    On or about August 16, 2019, Plaintiff Deborah Taylor was diagnosed with kidney cancer in Tampa, Florida and subsequently underwent a radical left nephrectomy.

148.    Plaintiff Mariza Torraco is a citizen and resident of Deerfield Beach, Florida. From approximately 1995 to 2025, Plaintiff Mariza Torraco was regularly exposed to PFAS through drinking water at residences in Boynton Beach, Florida; Delray Beach, Florida; Lake Worth, Florida; Fort Lauderdale, Florida; and Deerfield Beach, Florida.

149.    On or about July 25, 2023, Plaintiff Mariza Torraco was diagnosed with kidney cancer in Fort Lauderdale, Florida and subsequently underwent a radical left nephrectomy.

150.    Plaintiff Enrique Torres is a citizen and resident of Coral Springs, Florida. From approximately 1970 to 2025, Plaintiff Enrique Torres was regularly exposed to PFAS through drinking water at residences in Miami, Florida; Pompano Beach, Florida; and Coral Springs, Florida.

151.    On or about 2022, Plaintiff Enrique Torres was diagnosed with kidney cancer in Weston, Florida and subsequently underwent a left nephrectomy.

152.    Plaintiff Anna Tritta is a citizen and resident of Lake Worth, Florida. From approximately 2013 to 2025, Plaintiff Anna Tritta was regularly exposed to PFAS through drinking water at residences in Greenacres, Florida.

153.    On or about March 24, 2021, Plaintiff Anna Tritta was diagnosed with clear cell renal carcinoma in Wellington, Florida and subsequently underwent a partial left nephrectomy.

154.    Plaintiff Roberto Vieria is a citizen and resident of Deerfield Beach, Florida. From approximately 1988 to 2025, Plaintiff Roberto Vieria was regularly exposed to PFAS through drinking water at residences in Pompano Beach, Florida and Deerfield Beach, Florida.

155.    On or about September 2024, Plaintiff Roberto Vieria was diagnosed with testicular cancer in Boca Raton, Florida and subsequently underwent related treatment.

156.    Plaintiff Curtis Wagner is a citizen and resident of Beech Bluff, Tennessee. From approximately 1970 to 2004, Plaintiff Curtis Wagner was regularly exposed to PFAS through drinking water at residences in Tampa, Florida; Marathon, Florida; Lake Alfred, Florida; Deltona, Florida

157.    On or about July 2021, Plaintiff Curtis Wagner was diagnosed with kidney cancer in Bradenton, Florida and subsequently underwent a radical left nephrectomy.

158.    Plaintiff Kenneth Weir is a citizen and resident of Aurora, Colorado. From approximately 2001 to 2005, Plaintiff Kenneth Weir was regularly exposed to PFAS through drinking water at his residence in Tampa, Florida.

159.    On or about 2005, Plaintiff Kenneth Weir was diagnosed with testicular cancer in Charlotte, North Carolina and subsequently underwent an orchiectomy.

160.    Plaintiff Marvin Zuick is a citizen and resident of Lakeland, Florida. From approximately 1971 to 2024, Plaintiff Marvin Zuick was regularly exposed to PFAS through drinking water at residences in Winter Haven, Florida and Rockford, Illinois.

161.    On or about 2011, Plaintiff Marvin Zuick was diagnosed with kidney cancer in Lakeland, Florida and subsequently underwent a radical right nephrectomy.

B. **Defendants**

162.    Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products to which Plaintiffs were exposed.

163.    **3M:** Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or

PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

164.    3M is the only company that manufactured and/or sold AFFF containing PFOS.

165.    **AGC AMERICA:** Defendant AGC Chemicals Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

166.    **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

167.    **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

168.    **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

169.    **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

170.    **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

171. **CHEMDESIGN:** Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

172. **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold AFFF that contained PFOA.

173. **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

174. **CORTEVA:** Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

175. **DUPONT DE NEMOURS:** Defendant DuPont De Nemours, Inc. (f/k/a DowDuPont, Inc.) is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont.

176. Upon information and belief, Corteva was originally formed in February 2018 as a wholly-owned subsidiary of DowDuPont, Inc. On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off of Corteva. In doing so, DowDuPont, Inc. distributed all issued and outstanding shares of Corteva common stock to DowDuPont, Inc. stockholders by way of a pro-rata dividend. Upon information and belief, following that distribution, Corteva became the direct parent of DuPont, and holds certain DowDuPont, Inc. assets and liabilities.

177. Following the June 1, 2019 spin-off of Corteva and of another entity, Dow, Inc., DowDuPont, Inc. changed its name to DuPont De Nemours, Inc. ("New DuPont"). Upon information

and belief, New DuPont retained assets in the specialty products business lines, as well as the balance of the financial assets and liabilities of DuPont not assumed by Corteva.

178.    **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

179.    **DUPONT:** Defendant E.I. Du Pont De Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

180.    **CHEMOURS:** Defendant The Chemours Company ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.

181.    In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

182.    **CHEMOURS FC:** Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware limited liability company that conducts business throughout the United States. Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

183.    **TYCO:** Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

184.    Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International P.L.C., an Irish public limited company listed on the New York Stock Exchange

185.    Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFAS.

186.    Upon information and belief, Defendant John Does 1-49 were manufacturers and/or sellers of AFFF products. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time the Plaintiffs will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

187.    All of the foregoing Defendants, upon information and belief, have previously conducted and/or currently conduct their business throughout the United States. Moreover, some of the foregoing Defendants, if not all, have conducted and/or are currently conducting business in the State of Florida.

188.    Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

189.    The term "Defendants," without naming any specific one, refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

26

### III.   JURISDICTION & VENUE

190.    This Court has subject matter jurisdiction over this action because this is an action for damages in excess of thirty thousand dollars ($30,000.00).

191.    Venue is appropriate in Miami-Dade County pursuant to Fla. Stat. § 47.011 because a substantial part of the events and omissions giving rise to Plaintiffs' causes of action accrued in this County, and because the property and resources affected by Defendants' conduct are located in this County.

### IV.   FACTUAL ALLEGATIONS

A.   **The PFAS Contaminants at Issue: PFOA and PFOS**

192.    Both PFOA and PFOS fall within a class of chemical compounds known as perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

193.    PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

194.    PFOA and PFOS are stable, man-made chemicals.  They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

195.    Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver.  They have been found globally in

water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[1]

196.    Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[2]

197.    Notably, from the time these two compounds were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS. According to EPA, PFOA and PFOS are associated with high cholesterol, thyroid disorders, pregnancy-induced hypertension, preeclampsia, reproductive, developmental, and systemic effects, and cancers.[3]

198.    The EPA has warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[4]

199.    EPA continues to research the effects of PFAS.  In June 2022, after evaluating over 400 studies published since 2016 and applying human health risk assessment approaches, tools, and models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS exposure at which negative outcomes could occur are much lower than previously understood when the agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt).  EPA

---

[1] EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS),* Document No. EPA 822-R-16-002 (May 2016), available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025);  EPA, *Health Effects Support Document for Perfluorooctanoic Acid (PFOA)*, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfoa_hesd_final-plain.pdf (last accessed March 11, 2025).

[2] *See* notes 1, 2, *supra.  See also* EPA, Technical *Fact Sheet – Perfluorooctane Sulfonate (PFOS) and Perfluorooctanoic Acid (PFOA),* available at https://www.regulations.gov/document/EPA-HQ-TRI-2022-0270-0009 (last accessed March 11, 2025).

[3] *Id.*

[4] *See* EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025).

therefore announced new Interim Updated Health Advisory levels for PFOA of 0.004 ppt and 0.02 ppt for PFOS.[5]

200.    In April, 2024, EPA established legally enforceable levels, called Maximum Contaminant Levels (MCLs), for six PFAS in drinking water: PFOA, PFOS, PFHxS, PFNA, and HFPO-DA as contaminants with individual MCLs, and PFAS mixtures containing at least two or more of PFHxS, PFNA, HFPO-DA, and PFBS using a Hazard Index MCL to account for the combined and co-occurring levels of these PFAS in drinking water. EPA also finalized health-based, non-enforceable Maximum Contaminant Level Goals (MCLGs) for these PFAS.   The MCLs for PFOA and PFOS are each 4 parts per trillion ("ppt").[6]

**B. Aqueous Film-Forming Foam (AFFF) Contained PFOS and/or PFOA at Relevant Times**

201.    Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

202.    Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

203.    The AFFF products made by Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a

---

[5] EPA, *Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)*, Document Number 822-F-22-002, available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10154ST.txt (last accessed March 11, 2025).

[6] EPA, Per- and *Polyfluoroalkyl Substances (PFAS), Final PFAS National Primary Drinking Water Regulation*, available at https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (last accessed March 11 2025).

process that generates PFOS. All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

204.    When used as the Defendants intended and directed, AFFF causes PFOA, PFOS, and/or other PFAS compounds to enter the body of those handling, using, or otherwise exposed to the foam (including firefighters).  When using AFFF, firefighters may absorb PFOA and PFOS through their skin, inhale PFOA and PFOS compounds, or inadvertently ingest PFOA and PFOS compounds. Additionally, when used as the Defendants intended and directed, AFFF causes PFOA and PFOS to seep into groundwater, and thus, drinking water supplies in the areas in which it is used. Once in the water supply, PFOA and PFOS can travel long distances from where the AFFF was used. This has resulted in widespread contamination of drinking water supplies with PFOA and PFOS nationwide.

205.    Notably, AFFF can be made without PFOA and PFOS.  Unlike AFFF made with PFOA or PFOS, fluorine-free foams do not pose a significant health risk to individuals.

206.    Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to Plaintiffs' injuries.

C. **Defendants' Knowledge of PFOA and PFOS Hazards**

207.    On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when AFFF is used per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

208.    At all times pertinent herein, Defendants also knew or should have known that

PFOA and PFOS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

209.    For instance, in 1980, 3M published data in peer reviewed literature showing that humans retain PFOA in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOA from their body after all exposures had ceased.[7]

210.    By the early 1980s, the industry suspected a correlation between PFOA exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOA in workers' bodies and birth defects in children of workers.

211.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[8]

212.    Beginning in 1983, 3M documented a trend of increasing levels of PFOA in the bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[9]

---

[7] *See* Ubel, F.A., Sorenson, S.D., and Roach, D.E., *Health status of plant workers exposed to fluorochemicals - a preliminary report.* Journal Am. Ind Hyg. Assoc. J 41:584-89 (1980).

[8] *See* DuPont, *C-8 Blood Sampling Results,* available at
https://static.ewg.org/files/PFOA_013.pdf?_gl=1*anldwl*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21GC4
9KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0OMC4wLjAuMA..&_ga=2.26293428.885409355.1683587869-
581783177.1682689989 (last accessed March 11, 2025).

[9] *See* 3M, Internal Memorandum, *Organic Fluorine Levels*, (August 31, 1984), Office of

213.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.  The company stopped producing PFOA at approximately the same time.

214.    From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed and sold Fluorosurfactant Products, including Teflon nonstick cookware, and more recently PFAS feedstocks such as Forafac 1157 N, for use in the manufacturing of AFFF products.

215.    On information and belief, by no later than 2001 Old DuPont manufactured, produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products that were discharged into the environment and harmed Plaintiffs.

216.    DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[10]

217.    By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined DuPont $16,500,000 for violating the

---

Minnesota Attorney General, Exhibit List, No. 1313, available at
https://www.ag.state.mn.us/Office/Cases/3M/StatesExhibits.asp (last accessed March 11, 2025).

[10] EPA, Consent Agreement and Final Order, *In re E.I. DuPont de Nemours & Co.*, TSCA Docket TSCA-HQ-2004-0016 (Dec. 14, 2005), available at
https://www.epa.gov/sites/default/files/documents/dupontpfoasettlement121405.pdf (last accessed March 11, 2025).

Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."[11]

218.    By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from the Washington Works plant had reviewed the available scientific evidence and notified DuPont of a "probable link"[12] between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia.[13] By October 2012, the C8 Science Panel had notified DuPont of a probable link between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

219.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

220.    Defendants also knew or should have known that: (a) users of AFFF would likely include fire and rescue training organizations and their personnel; (b) fire and rescue personnel were foreseeable users of AFFF containing or degrading into PFOA and/or PFOS in both training and real-life fire emergency scenarios; (c) PFOA and PFOS are dangerous to human health when used by fire and rescue personnel; (d) fire and rescue personnel foreseeably lacked knowledge of these dangers;

---

[11] *Id.*

[12] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease. *See* C8 Panel, *C8 Probable Link Reports*, available at http://www.c8sciencepanel.org/prob_link.html (last accessed March 11, 2025).

[13]  *See* C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project (July 15, 2011), available at http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf  (last accessed March 11, 2025).

and, (e) fire and rescue personnel would require warnings of these dangers and/or affirmative instructions in the use of AFFF.

221.    Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, purchased, supplied, and/or sold PFOA/PFOS; (2) issued instructions on how AFFF should be used and disposed of; (3) failed to recall and/or warn the users of AFFF of the dangers to human health that result from the standard use and disposal of these products; negligently designed products containing or degrading into PFOA and/or PFOS; and (5) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the PFOA/PFOS.

222.    Further, Defendants failed to disclose to environmental regulators and the general public the likely existence of and health risks to the public caused by widespread PFOA and PFOS contamination in drinking water supplies across the country as a result of AFFF usage.

223.    As a direct result of Defendants' acts alleged in this Complaint, Plaintiffs suffered severe health effects caused by exposure to AFFF containing PFOA and/or PFOS.  As a direct and proximate result, Plaintiffs incurred substantial harm, both economic and non-economic.

224.    Defendants had a duty and breached their duty to evaluate and test such products adequately and thoroughly to determine their potential human health impacts before they sold such products. They also had a duty and breached their duty to minimize the risk of harm to human health caused by PFOA and PFOS.

**D.  The Impact of PFOA and PFOS on the Plaintiffs**

225.    Plaintiffs have been significantly and continuously exposed to PFOA and PFOS over many years as a result of Defendants' conduct.

226.    Plaintiffs have been diagnosed with the serious injuries set forth above, including kidney cancer, testicular cancer, thyroid disease, and ulcerative colitis.

227.    Plaintiffs' injuries were caused by Defendants' Fluorosurfactant Products.

228.    The use of Fluorosurfactant Products as directed and intended by the manufacturers caused Plaintiffs' exposure to PFOA and PFOS, which caused Plaintiffs' injuries.

229.    Therefore, as a direct and proximate result of Defendants' tortious conduct as set forth in this complaint, Plaintiffs were damaged in the following ways:

    a.    Plaintiffs suffered physical pain and mental anguish;

    b.    Plaintiffs incurred hospital, medical, pharmaceutical and other expenses; and

    c.    Plaintiffs experienced undue stress related to their diagnoses, medical conditions, and uncertainty about their prognosis.

**FIRST CAUSE OF ACTION**

**STRICT LIABILITY – DESIGN DEFECT AND/OR DEFECTIVE PRODUCT**

230.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

231.    Defendants designed, manufactured, formulated, packaged, distributed, promoted, marketed, and/or sold AFFF and other Fluorosurfactant Products containing PFOA/PFOS contaminants.

232.    Defendants represented, asserted, claimed and warranted that their AFFF and other Fluorosurfactant Products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

233.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers and marketers of PFOA/PFOS contaminants, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiffs, not to market any product which is unreasonably dangerous for its intended and foreseeable uses.

234.   When Defendants placed AFFF products into the stream of commerce, they were defective, unreasonably dangerous, and not reasonably fit, suitable, and safe for their intended, foreseeable and ordinary transportation, storage, handling, and uses for the following reasons:

a.   When used as intended and directed, PFOA and PFOS escape from AFFF products;

b.   Users and bystanders are exposed to PFOA and PFOS by inhalation, ingestion, or through skin absorption;

c.   PFOA and PFOS are likely to infiltrate the water supply when AFFF is used, handled, or disposed of in its foreseeable and intended manner;

d.   PFOA and/or PFOS persist and bioaccumulate in the human body; and

e.   PFOS and PFOA are associated with serious health risks and medical conditions.

235.   Plaintiffs used and were exposed to Defendants' AFFF and Fluorosurfactant Products in a reasonably foreseeable manner and without substantial change in the condition of such products.

236.   Defendants knew, or should have known, that use of AFFF in its intended manner would result in exposures and personal injuries to users, bystanders, and the general public, including Plaintiffs.

237.   The PFOA/PFOS-containing products used by Plaintiffs were defective in design and unreasonably dangerous because, among other things: PFOA and PFOS are bioacculative and toxic; and human exposure to PFOA and/or PFOS is associated with serious medical conditions including testicular cancer, kidney cancer, ulcerative colitis, and thyroid disease.

238.   Therefore, as a direct and proximate result of Defendants' defective design of AFFF, Plaintiffs were physically harmed and are damaged in the following ways:

a.   Plaintiffs suffered, and continue to suffer, physical pain and mental anguish;

b.   Plaintiffs incurred hospital, medical, pharmaceutical and other expenses;

c.   Plaintiffs have endured painful surgeries and treatments for their injuries;

    d.     Plaintiffs will continue to suffer – and incur additional costs – for the foreseeable future as a result of their injuries; and

    e.     Plaintiffs suffer undue stress from the fear that their cancer may recur and that they may develop additional health conditions.

<u>**SECOND CAUSE OF ACTION**</u>

**STRICT LIABILITY- FAILURE TO WARN**

239.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

240.    As manufacturers, distributors, suppliers, sellers and marketers of PFOA/PFOS-containing AFFF, Defendants had a duty to issue warnings of the risks posed by PFOA and/or PFOS to all persons whom its product might foreseeably harm, including Plaintiffs, the public, and public officials.

241.    At all times, Defendants knew or should have known that PFOA/PFOS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

    a.   Users of AFFF are exposed to PFOA and PFOS when AFFF is used, handled, or disposed of in its foreseeable and intended manner;

    b.   PFOA and PFOS are likely to infiltrate the water supply when AFFF is used, handled, or disposed of in its foreseeable and intended manner;

    c.   PFOA and PFOS exposure may cause diseases like Plaintiffs';

    d.   PFOA and/or PFOS persist and bioaccumulate in the human body; and

    e.   PFOA and/or PFOS pose significant threats to human health.

242.    The foregoing facts relating to the hazards that AFFF poses to human health are not the sort of facts that Plaintiffs and the general public could ordinarily discover or protect themselves against in the absence of sufficient warnings.

243. Defendants knew of the health risks associated with PFOA/PFOS- containing AFFF and failed to provide a warning that would lead an ordinary reasonable user, handler, or bystander of a product to contemplate the dangers associated with PFOA/PFOS- containing AFFF or an instruction that would have allowed Plaintiffs to avoid injury.

244. Defendants knew that their AFFF containing PFOA/PFOS contaminants would be purchased transported, stored, handled, and used without notice of the hazards which PFOA/PFOS pose to human health.

245. Defendants breached their duty to warn by unreasonably failing to provide warnings about potential and/or actual exposure to PFOA and/or PFOS, despite the fact that Defendants knew that these contaminants were in AFFF.

246. Plaintiffs were exposed to PFOA/PFOS in Defendants' Fluorosurfactant Products including AFFF either directly or through their drinking water.

247. Defendants' Fluorosurfactant Products to which Plaintiffs were exposed were used in a reasonably foreseeable manner and without substantial change in the condition of the products.

248. Defendants' Fluorosurfactant Products were defective in design and unreasonably dangerous products for the reasons set forth above.

249. Despite the known and/or foreseeable human health hazards associated with exposure to PFOA/PFOS, Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate those hazards.

250. In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their PFOA/PFOS contaminants or otherwise.

251. Therefore, as a direct and proximate result of Defendants' failure to warn, Plaintiffs were physically harmed and are damaged in the following ways:

a. Plaintiffs suffered, and continue to suffer, physical pain and mental anguish;

b.      Plaintiffs incurred hospital, medical, pharmaceutical and other expenses;

c.      Plaintiffs have endured painful surgeries and treatments for their injuries;

d.      Plaintiffs will continue to suffer – and incur additional costs – for the foreseeable future as a result of their injuries; and

e.      Plaintiffs suffer undue stress from the fear that their cancer may recur and that they may develop additional health conditions.

### THIRD CAUSE OF ACTION
### NEGLIGENCE

252.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

253.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers and handlers of AFFF containing PFOA and PFOS, Defendants owed a duty to Plaintiffs and all persons whom Defendants' products might foreseeably harm to exercise due care in the handling, control, disposal, sale, testing, labeling, use, warning, and instructing for use of products containing PFOA/PFOS.

254.    Despite the fact that Defendants knew that PFOA and PFOS are bioaccumulative, toxic, and can cause testicular cancer, kidney cancer, ulcerative colitis, thyroid disease, and other serious human health effects, Defendants negligently:

a.      designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFOA/PFOS-containing products;

b.      issued instructions on how AFFF products should be used and disposed of, thus improperly permitting human exposure to PFOA and/or PFOS;

c.      failed to recall and/or warn the users of AFFF products of the dangers

of human exposure associated with intended use and disposal of this

product; and

d.      failed and refused to issue the appropriate warnings and/or recalls to the

users of AFFF containing PFOA and/or PFOS regarding the proper use,

handling, and disposal of products containing this toxic chemical,

notwithstanding the fact that Defendants know the identity of the

purchasers of the AFFF products.

255.    As a direct and proximate result of Defendants' negligence, Plaintiffs have been significantly harmed as set forth in detail above.

256.    Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious disregard for the health and safety of others, including Plaintiffs.

## FOURTH CAUSE OF ACTION
### FRAUDULENT TRANSFER
### (Against DuPont and Chemours only)

257.    Plaintiffs reallege and reaffirm each and every allegation set forth in all proceeding paragraphs as if fully restated in this cause of action.

258.    Plaintiffs seek equitable and other relief pursuant to the Uniform Fraudulent Transfer Act against DuPont.

259.    Prior to and during 2015, Defendant DuPont was in the business of producing, making, fabricating, designing, marketing, and selling chemical feedstocks containing PFOA and/or

chemicals that can degrade into PFOA and/or other PFAS as part of their "performance chemicals business."

260.   Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary, and used it to spin off DuPont's "performance chemicals business" products line in July 2015.

261.   In addition to the transfer of the "performance chemicals business" products line, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFOA and other PFAS.

262.   Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture, design, marketing and sale of PFOA or other PFAS components for the use in AFFF products.

263.   As a result of the transfer of assets and liabilities to Chemours described in this Complaint, DuPont limited the availability of assets to cover judgements for all liability for damages and injuries from the manufacture, design, marketing, sale of PFOA or other PFAS components for the use in AFFF products.

264.   DuPont has (a) acted with intent to hinder, delay and defraud creditors, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably insufficient in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

265. Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of creditors, such as Plaintiffs, that have been damaged as a result of DuPont's actions as described in this Complaint.

266. Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

267. Plaintiffs seek to avoid the transfer of DuPont's liabilities for the claims brought in this Complaint and to hold DuPont jointly and severally liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

## TOLLING OF THE STATUTE OF LIMITATIONS

268. Plaintiffs hereby incorporate by reference the allegations contained within the preceding paragraphs of this Complaint as if restated in full herein.

### Discovery Rule Tolling

269. Plaintiffs did not know, nor could they have reasonably discovered by the exercise of reasonable diligence, that exposure to fluorochemical products, including AFFF, PFOA, and PFOS was harmful to human health. The risks of said chemicals and AFFF were not obvious to the users of AFFF, nor were they obvious to individuals such as Plaintiffs in the vicinity of AFFF use. Since Plaintiffs could not have reasonably discovered the defects and risks associated with the use of fluorochemical products, they could not protect themselves from exposure to Defendants' fluorochemical products. For this reason, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

270. Plaintiffs had no way of knowing about the risk of serious injury associated with the use of, and exposure to, AFFF and fluorochemical products until very recently. Further, Plaintiffs

could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF, PFOA, PFOS, and other fluorochemical products is harmful to human health within the time period allowed by any applicable statute of limitations.

271.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of, and exposure to, AFFF and fluorochemical products until very recently. Further, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful to human health within the time period allowed by any applicable statute of limitations.

272.    During the relevant times, Plaintiffs did not possess specialized scientific or medical knowledge. Plaintiffs did not, and could not, have discovered or known facts that could cause a reasonable person to suspect the risk associated with the use of Defendants' fluorochemical products. Further, a reasonable and diligent investigation by Plaintiffs earlier would not have disclosed that AFFF could cause personal injury.

273.    Wherefore, all applicable statutes of limitations pertaining to Plaintiffs' claims have been tolled by operation of the discovery rule.

## Fraudulent Concealment

274.    Rather than disclose critical safety and health information regarding its AFFF and fluorochemical products, Defendants have consistently and falsely represented the safety of AFFF products.

275.    This fraudulent concealment continues to the present day.

276.    Wherefore, due to Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein through the relevant time for this action, all applicable statutes of limitations have also been tolled.

**Estoppel**

277.     Defendants were under a continuous duty to consumers, end users, and other persons, such as Plaintiffs, coming into contact with their fluorochemical products, to provide truthful and reliable safety information concerning their products and the risks associated with their use, as well as exposure to AFFF.

278.     Rather than fulfill this duty, Defendants knowingly, affirmatively, and actively concealed important safety information and warnings concerning AFFF and the health risks associated with the same.

279.     Wherefore, Defendants are estopped from relying on any statute of limitations in defense of this action.

**PRAYER FOR RELIEF**

Plaintiffs respectfully pray for judgment against Defendants, jointly and severally, as follows:

a.   Compensatory damages and all other special damages according to proof including, but not limited to past and future medical and treatment costs; non-economic damages; loss of earnings and future earnings; and household expenses, among others.

b.   Avoiding the transfer of DuPont's liabilities for claims brought in this Complaint;

c.   Exemplary and Punitive damages;

d.   Attorneys' fees;

e.   Pre-judgment and post-judgment interest; and

f.   Any other and further relief as the Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by a jury on all of the triable issues of this Complaint.

Dated: August 13, 2025

/s/ Holly Werkema

**BARON & BUDD, P.C.**
Holly Werkema (FL Bar No. 71133)
hwerkema@baronbudd.com
Scott Summy (TX Bar No. 19507500)
*(Pro Hac Vice Forthcoming)*
ssummy@baronbudd.com
3102 Oak Lawn Dr., Ste. 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
Fax: (214) 279-9915

***Attorneys for Plaintiff***